# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CARMICHAEL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>M. AGUILAR, et al.,<br><br>　　　　Defendants. | Case No. 1:12-cv-01913 LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br>(Documents 43 and 45)<br><br>THIRTY-DAY OBJECTION DEADLINE<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE<br>(Document 49) |

Plaintiff Michael Carmichael ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed his complaint on November 26, 2012. Pursuant to Court order, he filed a First Amended Complaint on June 10, 2013. This action is proceeding on the following claims: (1) violation of the First Amendment against Defendants Meyer, Pressley, Wilson and Marshall; (2) violation of RLUIPA against Defendants Aguilar, Meyer, Pressley, Wilson and Marshall; and (3) violation of the Fourteenth Amendment against Defendants Meyer, Pressley and Marshall.

Defendants Aguilar, Meyer, Pressley and Wilson filed the instant motion for summary judgment[1] on October 21, 2014.[2] Plaintiff opposed the motion, and purported to move for summary

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

judgment, on November 4, 2014.  Defendants filed their reply on November 17, 2014.  The motion is submitted upon the record without oral argument.  Local Rule 230(l).

## I.   SURREPLY

Plaintiff filed a surreply on December 8, 2014.  Defendants moved to strike the filing as unauthorized on December 18, 2014.

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired.  Local Rule 230(l).  The Court generally views motions for leave to file a surreply with disfavor.  Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)).  However, district courts have the discretion to either permit or preclude a surreply.  See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

Plaintiff's surreply addresses what he perceives to be false statements made by Defendant Meyer in his declaration in support of Defendants' motion for summary judgment.  Plaintiff did not raise these issues in his opposition, and it appears that Plaintiff had other inmates submit requests for interviews in an attempt to challenge Defendant Meyer's statement that inmates could order food in their special purchase packages as long as they had funds to do so.  For example, Inmate Castillo submitted a request for interview regarding the procedure for ordering food in a special purchase package.  In response, Defendant Meyer explained that an inmate needed approval to do so.  Although Plaintiff believes that he has caught Defendant Meyer in some kind of lie, he is incorrect.  In his declaration, Defendant Meyer does not state that authorization is *not* required, he only states that an inmate must have sufficient funds.

Plaintiff's surreply does not change the outcome of this motion, as discussed above.  As the Court has considered the surreply and addressed it, Defendants' motion to strike is DENIED.

---

[2] Defendant Marshall is represented by separate counsel, and filed his own motion for summary judgment on October 21, 2014.

2

## II.   **LEGAL STANDARD**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meets their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial, and Plaintiff's

filings must be liberally construed because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he was transferred to McFarland Community Correctional Facility ("MCCF") on September 16, 2011. Soon after, he told staff that he was Muslim and was a participant in the Religious Diet Program known as "Halal Meat Alternative." Plaintiff indicated that he needed a transfer to an institution that could accommodate him, but he was told MCCF accommodates Muslims.

On September 27, 2011, Plaintiff put in a request to Counselor Castaneda. He also had verbal communications with Defendant D. Meyer, Assistant Warden. Defendant Meyer said he would research it, but instead stalled for months.

Plaintiff alleges that Defendant Aguilar, Food Manager, failed to order meat classified as Halal, stating on numerous occasions that it was not in the budget.

Plaintiff further alleges that Defendant Meyer denied him the opportunity to purchase Halal meat through special purchase, though he permitted a Jewish inmate to purchase kosher foods though special purchase twice.

Plaintiff also contends that Defendant Pressley, Assistant Warden, denied him a religious diet, stating that it was not within the budget to provide a Halal diet. He also said that CDCR did not indicate that the money for feeding inmates was also meant to include "Muslim inmates needing a Halal diet."

Plaintiff alleges that Defendant Wilson, Warden, also denied him a religious diet. He contends that she has been aware of the situation since she has been in a position of authority. Plaintiff contends that Defendant Wilson has burdened the practice of his religion.

Finally, Plaintiff alleges that Defendant Marshall, Counselor, denied Plaintiff a transfer to another prison where his diet needs could be accommodated. Although Defendant Meyer told Muslims that if they continued to complain about Halal meals, they would be transferred later, Defendant Marshall told Plaintiff that because MCCF was not an "institution," they were not obligated to provide Halal meals to Muslims.

4

## IV. UNDISPUTED MATERIAL FACTS[3]

MCCF is a medium-security prison designed to house inmates and parole violators for CDCR, and it is owned and operated by The Geo Group, Inc. MCCF has contracted with CDCR to provide services since 1997. ECF No. 43-2, at 3.

Defendant Meyer is the Associate Warden of Programs at MCCF. He is responsible for all vocational, educational, recreation and religious programming at MCCF. ECF No. 43-2, at 3.

Plaintiff arrived at MCCF on September 16, 2011. ECF No. 43-1, at 4. Prior to his transfer, he received the Religious Meat Alternate diet. ECF No. 43-1, at 36-37.

Soon after Plaintiff's arrival, he requested a Halal diet. Until then, Defendant Meyer had not heard of a Halal diet. MCCF did not offer a Halal diet at that time, as the contract with CDCR did not provide for a Halal diet. Defendant Meyer believes that Plaintiff was the first inmate to request a Halal diet since 1997. After Plaintiff made his request, Defendant Meyer contacted the Corporate Vice President of Programs in Florida for guidance on how to respond. He was advised that MCCF's common-fare vegetarian diet met the religious needs of all religious groups, with the exception of Jewish inmates. In light of this information, Defendant Meyer placed Plaintiff on the vegetarian diet while he further investigated Plaintiff's request for a Halal diet. ECF No. 43-2, at 3.

During this period, Defendant Meyer and other administrators sought direction from corporate headquarters and from CDCR as to how to proceed to accommodate Plaintiff's request. Because he knew it would take time to resolve the issue, Defendant Meyer reminded Plaintiff that he could purchase Halal food from the canteen to supplement his vegetarian diet. ECF No. 43-2, at 4.

Plaintiff received a vegetarian diet from September 17, 2011, to September 20, 2013.

Ultimately, MCCF began to offer the Religious Meat Alternate diet, as defined in California Code of Regulations, title 15, section 3054.3, offered at CDCR institutions. MCCF contracted with Sysco Food Services to provide Halal meat, and the Halal diet became available at MCCF on or about September 2013. ECF No. 43-2, at 4.

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint or opposition. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

1     Plaintiff began receiving a Halal diet on September 20, 2013.  ECF No. 43-1, at 4.

2     MCCF currently has a volunteer Muslim chaplain.  ECF No. 43-1, at 23.  There are formal
3  religious services on Fridays at MCCF.  There are also classes for Muslim inmates at MCCF on
4  Wednesdays.  ECF No. 43-1, at 25-26.

5     Plaintiff prays every day at MCCF and celebrates Ramadan.  EFC No. 43-1, at 26, 28.

6     MCCF offers Halal fish at the canteen, which has been available to Plaintiff during his
7  incarceration at MCCF.  ECF No. 43-1, at 46-47.  Inmates can purchase $220 worth of items
8  monthly from the canteen, and Plaintiff regularly supplemented his vegetarian diet with food from
9  the canteen.  ECF No. 43-2, at 4, 32-40.

10    Plaintiff could also order meat in his quarterly package.  ECF No. 43-1, at 49.  Inmates can
11 purchase up to 30 pounds of food in their quarterly packages.  ECF No. 43-2, at 4.  Plaintiff also got
12 four special purchase packages a year for "religious purchases."  ECF No. 43-1, at 50.  Plaintiff
13 ordered both quarterly and special purchase packages.  ECF No. 43-1, at 50.

14    Defendant Meyer acknowledges that it took time for MCCF to offer the Halal diet.
15 However, the delay was not to discriminate against Plaintiff.  MCCF had never been presented with
16 such a request, and it took time to get budgetary approval from corporate headquarters, to determine
17 the legality and sincerity of the request, to review the contract with CDCR, to get CDCR's feedback
18 on the issue, to coordinate the purchase of Halal foods, to prepare kitchen staff for the new meal
19 option, and to consult a nutritionist.  ECF No. 43-2, at 4.[4]

20    Defendant Aguilar is the Food Manager at MCCF.  She managed all dietary services,
21 including operational planning and management of the kitchen, service line, and dining area staff.
22 She also managed the food service budget.  Defendant Aguilar is aware of Plaintiff's allegation that
23 she had authority to order Halal meat before the implementation of the Halal diet.  However, as food
24 manager, she did not have the authority to implement new diets, or purchase new foods, without the
25 authorization of the Corporate Food Services Director.  She did not have this authorization in this

---

[4] Plaintiff attempts to dispute this by claiming, without support, that the delay showed that they were "not diligent in their duties and neglected the plaintiff's needs." ECF No. 45, at 14.  Plaintiff's speculative statement does not create a dispute as to Defendant Meyer's facts.

case. Defendant Aguilar did not participate in the decision to implement the Halal diet. ECF No. 43-2, at 60-61.

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).

Here, although Plaintiff captions his opposition as a motion for summary judgment, the evidence he provides is provided in opposition to Defendants' motion for summary judgment. Plaintiff also makes no arguments in support of his own motion, but rather argues against Defendants' motion.

To the extent that Plaintiff attempts to support his "motion for summary judgment" by simply repeating the allegations in his First Amended Complaint, this is insufficient. Arguments or contentions do not constitute evidence. See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence).

Accordingly, the Court recommends that Plaintiff's motion for summary judgment be DENIED.

## VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1. RLUIPA

A RLUIPA claim for may proceed only for injunctive relief against defendants acting within their official capacities. See Wood v. Yordy, 753 F.3d 899, 904 (9th Cir.2014) (RLUIPA does not contemplate liability of government employees in individual capacity); see also Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1114 (9th Cir. 2010) ("The Eleventh Amendment bars [the plaintiff's] suit for official-capacity damages under RLUIPA.").

Therefore, Plaintiff is only entitled to injunctive relief under RLUIPA. However, as Defendants argue, Plaintiff's subsequent receipt of a Halal diet in September 2013 moots his request for injunctive relief. Injunctive relief becomes moot when a party receives the requested relief after filing an action. See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir.1991) (per curiam).

The Court therefore recommends that summary judgment be granted on the RLUIPA against all Defendants.

2. First Amendment

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85.

Defendants first argue that Plaintiff's request for a Halal diet was not religious in nature, and therefore not deserving of protection under the First Amendment. They point to Plaintiff's statements that when he was served macaroni on the first day, "it wasn't a problem," ECF No. 43-1, at 38-39, and that he didn't mind being served vegetarian items occasionally. Using these statements, Defendants argue that Plaintiff's request for the Halal diet was not religious in nature, but was instead based on his perceived quality of the vegetarian diet.

Defendants take Plaintiff's testimony out of context, however. For example, when Plaintiff indicated that being served macaroni on his first day was not a problem, he was answering a question asking whether he had to eat the standard meat on the day he arrived. Similarly, Plaintiff's statement that vegetarian items were occasionally okay was made in explaining that he understood that sometimes the standard diet did not include meat. He continued to explain, however, that his problem is the denial of a Halal diet altogether. ECF No. 43-1, at 45.

Therefore, the Court declines to find that Plaintiff's request for a Halal diet was not religious in nature.

As noted above, a First Amendment violation exists only where the exercise of religion has been substantially burdened. While it is not for the Court to question Plaintiff's practices or beliefs, Hernandez v. C.I.R., 490 U.S. 680, 699 (1989), the Court questions whether Plaintiff has demonstrated that the denial of a Halal diet is a substantial burden where (1) he admits to purchasing

Halal meet from the canteen to supplement that diet; and (2) is able to purchase Halal food in his quarterly packages. Nonetheless, viewing the evidence in the light most favorable to Plaintiff, the Court will assume a substantial burden and continue with the analysis.

        a. *Turner Factors*

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). "Thus, [a] prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Ashker v. California Dep't Of Corr., 350 F.3d 917, 922 (9th Cir. 2003) (internal citations and quotations omitted).

A regulation that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89. This determination requires analysis of four prongs: (1) there must be a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives. Id. at 90.

        1. Valid, Rational Connection

In considering the first Turner factor, the Court must determine whether there was a legitimate penological interest that is rationally related to the disputed regulation. Id., at 89.

Here, it is undisputed that for approximately two years, Plaintiff was placed on the vegetarian diet because MCCF did not have a Halal diet option, and MCCF's contract with CDCR did not provide for such a diet. Defendants argue that there was a legitimate governmental interest in not immediately providing Plaintiff with a Halal diet that it did not offer. In this regard, it is undisputed that it took time to get budgetary approval from corporate headquarters, to determine the legality and sincerity of the request, to review the contract with CDCR, to get CDCR's feedback on the issue, to coordinate the purchase of Halal foods, to prepare kitchen staff for the new meal option, and to consult a nutritionist. Based on these undisputed facts, the Court finds that there was a legitimate

governmental interest in taking appropriate steps prior to instituting the diet, and that this interest was rationally related to the initial denial.

Plaintiff acknowledges that Defendants began the process of implementing a Halal diet almost immediately after he requested one. He also acknowledges that implementing new programs takes time, but suggests, without evidence, that Defendants were not diligent in their duties and "neglected" his needs. ECF No. 45, at 14.

Plaintiff also states, without support, that Defendants "made no effort" to accommodate him. ECF No. 45, at 3. He fails, however, to provide any evidence to dispute Defendants' actions upon learning of his request. In fact, as noted above, he acknowledged Defendants' efforts. Plaintiff's contradictory and conclusory statement is insufficient to create a dispute of fact.

### 2. *Alternative Means*

Under the second factor, the Court must consider whether Plaintiff has "alternative means by which he can practice his religion" or is "denied all means of religious expression." Shakur, 514 F.3d at 886 (citing Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993).

The undisputed evidence shows that Plaintiff was able to supplement his diet with Halal food purchased from the canteen. He was also able to purchase religious items in packages, attend formal religious services for Muslims on Fridays, attend classes on Wednesdays, pray daily and celebrate Ramadan.

These undisputed facts weigh heavily in favor of Defendants. Williams v. Morton, 343 F.3d at 219 (holding that the second Turner factor is satisfied if a prison allows daily prayer, attendance of special weekly services, and observance of religious holidays, even if inmates could eat vegetarian meals but not Halal meat).

### 3. *Impact of Accommodation*

Under the third Turner factor, the Court considers the "impact [the] accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally." Shakur, 514 F.3d at 886 (citing Ward, 1 F.3d at 878). Defendants argue, and the Court agrees, that this factor is inapplicable because Plaintiff was ultimately accommodated. To the extent this factor applies to the

two year time period, any delay was reasonable given the actions necessary to implement an entirely new religious meal program.

### 4. *Absence of Alternatives*

Finally, the Court must consider whether "there are ready alternatives to the prison's current policy that would accommodate [plaintiff] at de minimis cost to the prison." Shakur, 514 F.3d at 887 (citing Ward, 1 F.3d at 879). The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id. (citing Turner, 482 U.S. at 90). The Plaintiff carries the burden of demonstrating obvious, easy alternatives. O'Lone v. Shabazz, 482 U.S. 342, 350 (1987).

Plaintiff argues that the vegetarian diet was not sufficient, but he does not suggest an alternative to the path Defendants took to implement a Halal diet.[5] To the extent that Plaintiff argues that he received a Halal diet at his prior institution, or that MCCF/CDCR violated various policies by not immediately providing him with a Halal diet, neither of these issues are relevant to analyzing Defendants' actions in response to Plaintiff's request under Turner.

The Court finds that the undisputed facts weigh heavily in favor of Defendants under the Turner analysis, and that they are entitled to summary judgment on Plaintiff's First Amendment claim.

### 3. Equal Protection

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at

---

[5] Plaintiff's request for a transfer was discussed in the Findings and Recommendations regarding Defendant Marshall's motion for summary judgment.

891; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part on other grounds by Shakur, 514 F.3d at 884-85.

In his First Amended Complaint, Plaintiff contends that Defendant Meyer violated the Fourteenth Amendment when he denied Plaintiff the opportunity to purchase food through special purchase packages, but permitted a Jewish inmate to do so.

It is undisputed that inmates are allowed four special purchase packages a year for religious purchases. The parties dispute, however, whether Plaintiff was denied the opportunity to purchase food in his special purchase package while a Jewish inmate was allowed to do so.

Even taking Plaintiff's allegations as true, however, Plaintiff cannot show a genuine dispute of fact as to whether Plaintiff was treated different *on the basis of his religion*. Plaintiff's conclusory, unsupported statement in his First Amended Complaint that Defendants discriminated against him because he was Muslim is not sufficient. In attempting to establish the existence of a factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleading; he is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

Defendant Meyer denies any type of discrimination and states that all inmates, regardless of ethnicity, could order food in special purchase packages as long as they had money in their accounts. ECF No. 43-2, at 4. In attempting to create a dispute of fact, Plaintiff states that he was told to use his regular quarterly package to purchase Halal food because it "wouldn't be fair to the rest of the inmates to allow Plaintiff to purchase food on a special purchase package." ECF No. 45, at 7. Plaintiff also argues that inmate David Cohn, a Jewish inmate, was permitted to purchase Kosher food in his special purchase packages beginning in September 2011.[6] ECF No. 45, at 46.

Plaintiff's evidence does not, in any way, suggest that he was discriminated against on the basis of his Muslim religion. This is especially true where the undisputed evidence shows that

---

[6] Plaintiff submits an institutional document, signed by Inmate Cohn, that indicates that Inmate Cohn was permitted to supplement his diet with Kosher items purchased at the canteen and through "approved quarterly packages." ECF No. 45, at 46. He also submits a 602 signed by Inmate Cohn where he complains of nutritionally deficient vegetarian meals. In response, Defendant Meyer states that Inmate Cohn agreed to supplement his diet with Kosher foods acquired through special purchase. ECF No. 45, at 44.

12

Plaintiff was permitted to purchase Halal meat from the canteen and through at least general quarterly packages, was permitted to practice his religion in almost all other respects, and was eventually accommodated with a Halal diet. In other words, despite the dispute as to whether he was able to purchase Halal foods in his special purchase package, there is no evidence of intentional discrimination on the basis of Plaintiff's Muslim faith.

Insofar as Plaintiff suggests in his opposition that Defendants violated the Fourteenth Amendment by not providing menu rotations to Muslim inmates while providing them for recipients of the regular diet, Kosher diet and vegetarian diet, he cannot expand his claims by way of his opposition. This claim was not stated in his First Amended Complaint and it is not before the Court. See eg. Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011).

The Court finds that Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.[7]

### VII. FINDINGS AND RECOMMENDATIONS

The Court finds that Defendants' motion for summary judgment should be GRANTED, and that Plaintiff's motion for summary judgment should be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies may be filed within fourteen (14) days of service of objections. The parties are advised that failure to file objections within the specified time may result

///
///
///

---

[7] Plaintiff also alleges that Defendant Pressley violated the First and Fourteenth Amendments when he told Plaintiff that the money set aside to feed inmates does not contemplate offering a Halal diet to Muslims. Similarly, he alleges that Defendant Wilson violated the First Amendment when he told Plaintiff that MCCF did not have to provide Muslims with a Halal diet. Although Defendants do not specifically address these allegations, they have provided undisputed evidence that Plaintiff was not denied a Halal diet in violation of the First Amendment and was not discriminated against in violation of the Fourteenth Amendment. Given that Plaintiff's vague statements in his First Amendment Complaint are the only allegations made against Defendants Pressley and Wilson, the rulings apply to Defendants Pressley and Wilson, as well. The Court also notes that other than Plaintiff's conclusory statements in his First Amended Complaint, he has not offered any evidence specifically addressing either Defendants Pressley or Wilson.

in the waiver of rights on appeal.  Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 11, 2015**                              /s/ *Dennis L. Beck*
                                                          UNITED STATES MAGISTRATE JUDGE